***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments of the parties. The appealing parties have shown good ground to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 *********** RULING ON PROCEDURAL MATTER
Defendant filed an Objection to Plaintiff's Notice of "Cross-Appeal." Plaintiff filed a Response and Defendant thereafter filed a Reply. The Objection was held in abeyance by Chair Young and came before the undersigned for review. *Page 2 
Plaintiff's Form 44 was untimely filed. However, the Full Commission review is de novo.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to misjoinder or nonjoinder of parties.
4. The carrier on the risk for Defendant in this claim was The PMA Insurance Group.
5. Plaintiff sustained a compensable injury on June 24, 2003.
6. Plaintiff was a student in Anson County Schools and employed through a grant program at the time of her injury.
7. Defendant paid Plaintiff pursuant to a Form 60 dated July 29, 2003 at the compensation rate of $168.24, based upon an average weekly wage of $252.36, until August 15, 2006.
8. On August 15, 2006, Defendant reduced Plaintiff's compensation rate to $30.00 per week by filing an amended Form 60 and notifying all parties. *Page 3 
9. Counsel for Plaintiff sent a letter to counsel for Defendant dated August 18, 2006, objecting to the reduction in Plaintiff's compensation rate stated on the amended Form 60.
10. Defendant served an amended Form 22, dated September 11, 2007, upon counsel for Plaintiff on October 26, 2007.
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Industrial Commission Forms
 • Exhibit 3: Plaintiff's medical records
 • Exhibit 4: Plaintiff's discovery responses
 • Exhibit 5: Documents regarding WIA Youth Summer Employment program
The following documents were accepted into evidence as Plaintiff's exhibits:
 • Exhibit 1: Form 22 dated July 25, 2003
 • Exhibit 2: Amended Form 22 dated September 11, 2007
 • Exhibit 3: "Amended Form 60" dated August 15, 2006
 • Exhibit 4: Affidavit of Frances Pope
 • Exhibit 5: Letter dated August 18, 2006 from Plaintiff's counsel to Defendants' counsel
The following document was accepted into evidence as a Defendant's exhibit:
 • Exhibit 1: Pay record for Plaintiff for 2002 and 2003
A transcript of the deposition of the following was also received post-hearing: *Page 4 
 • Dr. Jeffrey M. Daily
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is currently 22 years old, with a date of birth of July 31, 1986.
2. When Plaintiff sustained her compensable injury, she was 16 years old. At that time, she was a high school student and she was employed in the Workforce Investment Act ("WIA") program through the Anson County School System. The WIA program provides an opportunity for disadvantaged youths to earn wages and receive general job training and extra academic attention during one month of the summer break.
3. To be eligible for the WIA program in Anson County, a student must be currently enrolled in high school and between the ages of 14 and 18. Once a student turns 18 or graduates, she is no longer eligible.
4. Plaintiff participated in the WIA program during June of 2002 and June of 2003. She was eligible to participate in the summer of 2004 but did not do so.
5. The term of Plaintiff's employment in the WIA program in the summer of 2003, when she was injured, was June 2 through June 30, 2003. Plaintiff worked Monday through Thursday each week, seven hours per day, as a custodian assistant. On Fridays, she attended classes in math and reading for seven hours per day but was still paid. Plaintiff earned $5.15 per hour, which was minimum wage at the time.
6. As a custodian assistant, Plaintiff's duties included stocking bookshelves, picking up litter, washing windows, raking and sweeping. Plaintiff was not permitted to use any power *Page 5 
tools or equipment, or any implement with a cord, because she was under 18. With the exception of the power tools, Plaintiff did all that was reasonable for an adult janitor to do.
7. On June 24, 2003, Plaintiff twisted her right ankle while doing her job, sustaining a fracture/dislocation of her right ankle.
8. Because of her injury, Plaintiff did not work the remaining days in the program. However, because the money had already been budgeted, Defendant-Employer paid her full wages through the last day of the program, June 30, 2003.
9. Plaintiff underwent an open-reduction-internal-fixation procedure of her right ankle on June 25, 2003 with Dr. Jeffrey M. Daily. On September 25, 2003, Dr. Daily performed another procedure to remove the screw in Plaintiff's right ankle.
10. On April 1, 2005, Dr. Daily noted that Plaintiff still had swelling in her right ankle with activity and that it was common for patients with Plaintiff's injury to experience ongoing symptoms. Dr. Daily found Plaintiff to be at maximum medical improvement and assigned a 15% permanent partial impairment rating.
11. On February 3, 2006, Dr. Daily noted that Plaintiff had continuing symptoms in her right ankle but that he expected some moderate improvement over time. Dr. Daily did not change his opinion that plaintiff was at maximum medical improvement and did not change her rating.
12. On May 19, 2006, Dr. Daily assigned permanent restrictions of no prolonged standing over 30 minutes and no running or jumping, based on his last examination of plaintiff in February 2006. Dr. Daily has not examined plaintiff since February 3, 2006.
13. At his deposition, Dr. Daily opined that any opinion on the likelihood of arthritic degeneration in the future or the need for future treatment would be speculative. *Page 6 
14. Because the WIA program is limited in duration with a set amount of funding from the federal government, Plaintiff could not have earned any wages in the program beyond June 30, 2003. The employment was by nature, casual and of short duration. The undersigned find, based upon the competent evidence of record, that there is an adult custodian position of similar nature to plaintiff's position, for wage-comparison purposes.
15. An entry-level janitor working for Defendant as of January 1, 2003 earned $7.67 per hour.
16. Plaintiff graduated from high school on May 25, 2005.
17. Plaintiff is currently enrolled in the applied science/nursing program at Richmond Community College. She began classes there in August of 2005. As of the evidentiary hearing, Plaintiff was still taking "development" classes necessary to qualify for the nursing program, and she had not yet begun the two-year full-time program for an associate's degree in nursing. As of the evidentiary hearing, Plaintiff did not know when she would begin the two-year nursing program, and she would also have to obtain her CNA license prior to starting the nursing curriculum.
18. Since her high school graduation, Plaintiff has not worked or looked for a job in any fashion.
19. Defendant filed a Form 60 shortly after the injury by accident setting forth an average weekly wage of $252.36. On August 15, 2006, Defendant reduced Plaintiff's compensation rate to $30.00 per week by filing an amended Form 60 and notifying all parties.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW *Page 7 
1. Plaintiff sustained a compensable injury by accident to her right ankle on June 24, 2003. N.C. Gen. Stat. § 97-2(6).
2. Defendant admitted the compensability of Plaintiff's injury by accident by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with Plaintiff. Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277 (2001).
3. In order to meet the burden of proving continuing disability, Plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of proof by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russellv. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993).
4. In the case at hand, plaintiff was assigned permanent restrictions and has not been written completely out of work by a treating physician for her compensable injury. Plaintiff has not sought work since her graduation from high school on May 25, 2005 and has taken herself out of the workforce, attending community college. As such, plaintiff has not met her burden of *Page 8 
proving continuing disability after May 25, 2005. Russell v. LowesProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. With regard to minor employees, N.C. Gen. Stat. § 97-2(5) states, in relevant part:
 Compensation for temporary total disability . . . shall be computed upon the average weekly wage at the time of the accident, unless the total disability extends more than 52 weeks, and then the compensation may be increased in proportion to (her) expected earnings.
N.C. Gen. Stat. § 97-2(5) further states that the method of computing Plaintiff's average weekly wage should be fair and just to both parties. Plaintiff's period of temporary total disability has extended beyond 52 weeks in this claim and there is competent evidence showing what an entry-level janitor, a person of the same grade and character employed in the same class of employment in the same community, would have earned.
6. Given the nature of Plaintiff's employment and the legislative intent to treat children fairly, the undersigned concludes that, per the "fourth method" of N.C. Gen. Stat. § 97-2(5), the only result that is fair and just to all parties for the calculation of Plaintiff's average weekly wage is arrived at by using an average weekly wage of an entry-level janitor as Plaintiff's average weekly wage. Thus, plaintiff's average weekly wage is $306.80, with a compensation rate of $204.54. N.C. Gen. Stat. § 97-2(5).
7. Defendants filed their Form 60 on or about July 29, 2003 and began paying temporary total disability compensation to Plaintiff at the rate of $168.24 per week. The Form 60 is not a binding award with respect to the average weekly wage or compensation rate. Thus, Plaintiff is not entitled to sanctions when Defendant reduced Plaintiff's compensation rate by filing an Amended Form 60 as prescribed by N.C. Gen. Stat. § 97-18(b). *Page 9 
8. Plaintiff is entitled to have Defendant provide further medical treatment for her compensable right ankle injury with Dr. Daily that is reasonably required to effect a cure, provide relief and/or lessen the period of Plaintiff's disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
9. Plaintiff's contention that Defendant should pay her community college tuition as vocational rehabilitation under N.C. Gen. Stat. § 97-25 was not raised in the Pre-Trial Agreement and, as such, is not addressed here.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee approved below, Defendant shall pay to Plaintiff temporary total disability benefits in the amount of $204.54 per week from June 24, 2003 through May 25, 2005. Accrued benefits that have not already been paid shall be paid in a lump sum subject to an attorney's fee approved below.
2. A reasonable attorney's fee of 25% of the compensation due Plaintiff under paragraph 1 of this Award is approved for Plaintiff's counsel and shall be paid as follows: 25% of the accrued and unpaid compensation due plaintiff under paragraph 1 of this Award shall be deducted from that sum and paid directly to plaintiff's counsel.
3. Plaintiff's request for sanctions for Defendant's modification to Plaintiff's compensation rate is HEREBY DENIED. *Page 10 
4. Dr. Daily IS HEREBY DESIGNATED as Plaintiff's treating physician, and, subject to the limitations period of N.C. Gen. Stat. § 97-25.1, Defendants SHALL authorize and pay for the treatment that Dr. Daily recommends for Plaintiff's compensable right ankle injury.
5. Defendants shall pay the costs. As part of their costs, if they have not done so already, Defendants shall pay an expert witness fee to Dr. Daily in the amount of $688.75 or the amount actually billed, whichever is less.
This the 6th day of January, 2009.
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ BUCK LATTIMORE COMMISSIONER *Page 1